**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHANTAY HEAVEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRIME HYDRATION LLC,<br><br>Defendant. | Case No. 2:24-cv-04754<br><br>Hon. Nitza I. Quiñones Alejandro |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Dated: September 30, 2024

**ATLEE HALL, LLP**
Mark C. Atlee (PA No. 204627)
415 North Duke Street
Lancaster, PA 17602
Telephone: (717) 393-9596
Facsimile: (717) 393-2138
E-mail: mcatlee@atleehall.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*pro hac vice* forthcoming)
Max S. Roberts (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: aleslie@bursor.com
mroberts@bursor.com

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I. BECAUSE DEFENDANT FAILED TO MEET ITS BURDEN TO ALLEGE ARTICLE III STANDING, THIS CASE MUST BE REMANDED ........................................................................ 2

II. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT ........................................................................ 4

A. Defendant Has Purposefully Availed Itself Of The Privilege Of Doing Business In This District ........................................ 4

1. Defendant Is Subject To Specific Jurisdiction Under The Traditional Test ........................................ 4

2. Application Of The Calder Effects Test Is Inconsequential To The Court's Exercise Of Specific Jurisdiction Over Defendant ........................................ 8

3. Alternatively, The Court Should Direct The Parties To Engage In Jurisdictional Discovery ........................................ 9

III. PLAINTIFF PLAUSIBLY ALLEGES A VIOLATION OF THE WESCA ........ 10

A. Plaintiff Plausibly Alleges The Contents Of Her Communications Were Intercepted ........................................ 10

B. Plaintiff May Pursue A Civil Action For The Violation Of The WESCA ........................................ 14

C. Defendant Has Not Met Its Burden To Show Plaintiff Consented To The Interception Of Her Communications ........................ 15

1. Defendant Cannot Show Plaintiff Consented To The Website's Privacy Policy, Or Consented To The Wiretapping Just By Visiting The Website ........................................ 16

2. Defendant Cannot Show Plaintiff's Alleged Consent to Meta's Policies Equated To Her Consent To The Interception Of Her Communications On The Website ........................................ 20

IV. DEFENDANT HAS NOT MET ITS BURDEN OF SHOWING META AND GOOGLE SHOULD ARE NECESSARY PARTIES WHO MUST BE JOINED ........ 22

CONCLUSION ........ 27

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Balletto v. Am. Honda Motor Co.*,
2024 WL 589090 (N.D. Cal. Feb. 13, 2024) .................................................. 16

*Bank of America National Trust & Savings Association v. Hotel Rittenhouse Associates*,
844 F.2d 1050 (3d Cir.1988) .................................................. 22

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .................................................. 19

*Braun v. Philadelphia Inquirer, LLC*,
2023 WL 7544160 (E.D. Pa. Nov. 13, 2023) .................................................. 11, 15

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .................................................. 15

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .................................................. 15

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) .................................................. 17

*Collier v. SP Plus Corp.*,
889 F.3d 894 (7th Cir. 2018) .................................................. 2

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) .................................................. 12, 14, 15

*Cumberland Cnty. v. Chemours Co.*,
608 F. Supp. 3d 294 (E.D.N.C. 2022) .................................................. 3

*Curry v. Revolution Labs, LLC*,
949 F. 3d 385 (7th Cir. 2020) .................................................. 7

*Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*,
635 F.3d 87 (3d Cir. 2011) .................................................. 23

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009) .................................................. 6, 7

*Doffing v. Meta Platforms, Inc.*,
2022 WL 3357698 (D. Or. July 20, 2022) .................................................. 5

*Emmett v. Delta Air Lines, Inc.*,
2024 WL 2816502 (W.D. Pa. June 3, 2024) ........ 11, 13

*Farst v. AutoZone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023)........ 13, 15

*General Refractories Co. v. First State Ins. Co.*,
500 F.3d 306 (3d Cir. 2007) ........ 22, 23

*Goldstein v. Costco Wholesale Corporation*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021)........ 12

*H. H. Robertson Co. v. Lumbermen's Mut. Cas. Co.*,
94 F.R.D. 578 (W.D. Pa. 1982) ........ 26

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) ........ 9

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023)........ 15

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)........ 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)........ 21, 22

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023)........ 17

*James v. Global TelLink Corp.*,
852 F.3d 262 (3d Cir. 2017) ........ 16

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)........ 11, 12

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022)........ 17

*Johnson v. Blue Nile, Inc.*,
2021 WL 3602214 (N.D. Cal. Aug. 13, 2021) ........ 5, 6

*Laborers' Int'l Union v. Foster Wheeler Energy Corp.*,
26 F.3d 375 (3d Cir. 1994) ........ 8

*Levy v. Jaguar Land Rover North Am., LLC.*,
2020 WL 563637 (D.N.J. Feb. 4, 2020) ........ 9

*Lewis v. Alexander*,
685 F.3d 325 (3d Cir. 2012) ........ 1, 2

*Lightoller v. Jetblue Airways Corporation*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 15

*Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Services*,
876 F.2d 1051 (1st Cir. 1989) ........ 3

*Massie v General Motors, LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) ........ 15

*Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*,
960 F. 2d 1217 (3d. Cir. 1992) ........ 9

*Mocek v. Allsaints USA Ltd.*,
220 F. Supp. 3d 910 (N.D. Ill. 2016) ........ 3

*Morphotrust USA LLC v. Identrix, LLC*,
2016 WL 3512131 (D. Mass. June 21, 2016) ........ 7

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 18

*Oliver v. Noom, Inc.*,
2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) ........ 10, 13, 17, 18

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ........ 13

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) ........ 17

*Popa v. PSP Grp., LLC*,
2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) ........ 13

*PowerHouse Communications, LLC v. Midstate Communication Contractors, Inc., & Clayton Lawrence*,
2024 WL 4253347 (M.D. Pa. Sept. 20, 2024) ........ 9

*Rancourt v. Meredith Corporation*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ........ 4, 5

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 12

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) .......... 5

*Sabric v. Martin*,
2009 WL 3769983 (M.D. Pa. Nov. 10, 2009) .......... 1, 2

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 13

*Schnur v. JetBlue Airways Corporation*,
2024 WL 2816552 (W.D. Pa. June 3, 2024) .......... 11, 13

*Sullivan-Blake v. Fedex Ground Package System., Inc.*,
2020 WL 518139 (W.D. Pa. Jan. 31, 2020) .......... 23, 24, 25

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) .......... 4, 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 15

*Vincent v. National Debt Relief LLC*,
2024 WL 3344227 (S.D.N.Y. July 8, 2024) .......... 18

*Whyham v. Piper Aircraft Corp.*,
96 F.R.D. 557 (M.D. Pa. 1982) .......... 23, 24, 25

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) .......... 15, 16

*Zanotti v. Invention Submission Corp.*,
2020 WL 2857304 (S.D.N.Y. June 2, 2020) .......... 3

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997) .......... 6, 7, 8

**STATUTES**

18 Pa. Cons. Stat. § 5701 .......... 1

18 Pa. Cons. Stat. § 5702 .......... 10, 13

18 Pa. Cons. Stat. § 5704(4) .......... 16

18 Pa. Cons. Stat. § 5725 .......... 14

28 U.S.C. § 1441(a) .......... 1

28 U.S.C. § 1447(c) .......... 2, 3

Fla. Stat. § 934.02(12)(c) .......... 13

**RULES**

Fed. R. Civ. P. 12(b)(7) .......... 22

Fed. R. Civ. P. 19 .......... 22, 23

**OTHER AUTHORITIES**

WILLIAM W. SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL (2005) .......... 8

Plaintiff Shantay Heaven ("Plaintiff") respectfully submits this opposition to Defendant Prime Hydration, LLC's ("Defendant" or "Prime") Motion to Dismiss (ECF No. 5) (the "Motion" or "MTD").

**INTRODUCTION**

Defendant, Prime Hydration, LLC owns and operates a website, https://drinkprime.com (the "Website") where its consumers can view and purchase its products. Complaint ("Compl.") ¶ 1. Unfortunately for its Pennsylvania-based consumers, Defendant secretly procures third parties, Meta Platforms, Inc. ("Meta") and Google LLC ("Google") (collectively, the "Trackers") to intercept Website users' communications with Prime via the Website. *Id.* ¶ 2. All of this is done without Website users' consent because Defendant fails to give users adequate notice of its practices. *Id.* ¶¶ 8, 73, 89. Therefore, through these practices, Defendant violates Pennsylvania's Wiretapping and Electronic Surveillance Act ("WESCA"), 18 Pa. Con. Stat. §§ 5701, *et seq*. *Id.* ¶ 6.

However, it is not the Court's job to adjudicate this matter. On September 9, 2024, Defendant removed the instant action to this Court pursuant to 28 U.S.C. § 1441(a). ECF No. 1. Yet, Defendant now turns around and moves to dismiss for lack of Article III standing. MTD at 13-19. As explained in more detail in Plaintiff's Motion to Remand (ECF No. 6), as the party seeking federal jurisdiction, Defendant "bears the burden of establishing" standing, including establishing "an injury in fact consistent of an actual or imminent invasion of legally protected interest." *Lewis v. Alexander*, 685 F.3d 325, 338 (3d Cir. 2012); *see also Sabric v. Martin*, 2009 WL 3769983, at *1 (M.D. Pa. Nov. 10, 2009). Because Defendant has not even attempted to meet this burden here, the Court should remand this action to the Court of Common Pleas and award

Plaintiff fees and costs pursuant to 28 U.S.C. § 1447(c). No further action is required, nor can it be required based on Defendant's failure to plead standing.

Should the Court find Article III standing, however, Defendant's other arguments also fail. Plaintiff has alleged all elements of her WESCA claim—including the interception of contents and the right to bring a civil action—and Defendant has failed to establish Plaintiff consented to the wiretapping. Moreover, Defendant's targeted marketing and sale of products in Pennsylvania, and the revenue Defendant derives, therefrom, are sufficient for this Court to exercise personal jurisdiction over Defendant. Finally, Defendant does not show that Meta and Google must be joined as necessary parties to this action, nor that it is infeasible to join the Trackers such that dismissal is required.

For the reasons set forth below, the Court should deny Defendant's Motion.

## ARGUMENT

### I. BECAUSE DEFENDANT FAILED TO MEET ITS BURDEN TO ALLEGE ARTICLE III STANDING, THIS CASE MUST BE REMANDED

Defendant argues Plaintiff has not alleged "an injury in fact sufficient to confer Article III standing." MTD at 13. But, because Defendant removed this action to this Court, Defendant "bears the burden of establishing" standing, including establishing "an injury in fact consistent of an actual or imminent invasion of legally protected interest." *Lewis v. Alexander*, 685 F.3d 325, 338 (3d Cir. 2012); *see also Sabric v. Martin*, 2009 WL 3769983, at *1 (M.D. Pa. Nov. 10, 2009). As further articulated in Plaintiff's Motion to Remand (ECF No. 6), Defendant does not even *attempt* to meet this burden, instead arguing the exact opposite. Accordingly, this action must be remanded and Plaintiff should be awarded fees and costs pursuant to 28 U.S.C. 1447(c). *See also* ECF No. 6-2 at 3-6; *Collier v. SP Plus Corp.*, 889 F.3d 894, 895 (7th Cir. 2018) (holding "the case

was not removable, because the plaintiffs lack Article III standing—negating federal subject-matter jurisdiction" and "remand[ing] for the district court to return the case to state court")

To be clear, the Court should *not* rule that Plaintiff lacks Article III standing. Instead, the Court should rule that because Defendant, as the removing party, has failed to allege Article III standing, this action must be remanded. *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Services*, 876 F.2d 1051, 1053-54 (1st Cir. 1989) (concluding § 1447(c) requires district court to remand, not dismiss, for lack of standing); *Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at *7 (S.D.N.Y. June 2, 2020) ("[T]here is persuasive authority in this Circuit and elsewhere that where no party shoulders the burden of proving jurisdiction in a case removed from state court, remand is the appropriate remedy without further analysis."). To hold otherwise would be to countenance Defendant's attempt to "have it both ways by asserting, then immediately disavowing, federal jurisdiction, apparently in hopes of achieving an outright dismissal with prejudice, rather than the remand required by § 1447(c)." *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914 (N.D. Ill. 2016). Such a holding would be improper. *Cumberland Cnty. v. Chemours Co.*, 608 F. Supp. 3d 294, 297 (E.D.N.C. 2022) ("Defendants cannot use the bare requirements of section 1332 to get a foot in the door of a federal court and thereby obtain a clean slate on which to seek dismissal for lack of subject-matter jurisdiction.")

Accordingly, instead of determining whether Plaintiff has sufficiently plead an injury-in-fact sufficient for Article III standing, the Court should instead remand this case to state court due to Defendant's failure to allege that Plaintiff has Article III standing.

## II. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT

### A. Defendant Has Purposefully Availed Itself Of The Privilege Of Doing Business In This District

#### *1. Defendant Is Subject To Specific Jurisdiction Under The Traditional Test*

Defendant argues the Court lacks specific personal jurisdiction over it because "Plaintiff has failed to show that Prime purposefully directed alleged activities at Pennsylvania." MTD at 8-9. This is incorrect.

In the realm of interactive websites, such as Defendant's, the Third Circuit requires that the "defendant intentionally interact with the forum state via the website to show purposeful availment." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). In other words, there must be a showing of an interactive website plus "something more" to fulfill the purposeful availment requirement. *Id.* (internal quotations omitted).

*Rancourt v. Meredith Corporation*, 2024 WL 381344 (D. Mass. Feb. 1, 2024), is instructive. In *Rancourt*, the plaintiff alleged the defendant violated the Video Privacy Protection Act by incorporating third-party trackers onto its mobile application, thereby disclosing to these third parties the plaintiff's protected information. *Id.*, at *1-2. The defendant's purpose for embedding the third-party trackers onto the application was to "target marketing campaigns and advertisements at the App user and thus maximize ad revenue, as well as to conduct user analytics." *Id.*, at *1. In finding that the court had specific personal jurisdiction over the defendant, the *Rancourt* court concluded the defendant purposefully availed itself to the forum state because it "use[d] the information it collect[ed] [from its users via its application] to tailor advertisements and content to increase user engagement; thus, taking a 'voluntary act[]' to foster" the regular course of sales in the forum. *Id.*, at *9. The *Rancourt* court further noted "roughly 66,000,000, or

2.02%, of the roughly 3,000,000,000 advertisements that were run on the App in the United States were run on devices located in Massachusetts and these advertisements generated $66,677.96 in revenue, accounting for 2.02% of the total revenue Meredith generated from the App in the United States." *Id.*, at *3.

In other words, a defendant's collection of data from its website or app to deliver targeted advertisement to increase user engagement, and therefore, revenue, qualifies as the "something more" needed to show purposeful availment. Other courts have made similar determinations. *See*, *e.g.*, *Doffing v. Meta Platforms, Inc.*, 2022 WL 3357698, at *4 (D. Or. July 20, 2022) ("Snap tracks Oregon residents by their location and monitors how they use the product so that it can recommend new connections, products, or activities in order to increase user engagement. Snap also relies heavily on its ability to collect and disclose to its advertisers the personal data and metrics collected from Oregon residents, including M.K. Snap stores and utilizes incredible amounts of personal information from every Oregon user in a manner and to a degree that jurisdictional jurisprudence could not have imagined as little as ten years ago."); *Johnson v. Blue Nile, Inc.*, 2021 WL 3602214, at *1 (N.D. Cal. Aug. 13, 2021) (holding "[i]f there were wiretapping, then there would be personal jurisdiction" of a Georgia-based, Delaware incorporated corporation in California federal court); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *4 (N.D. Cal. May 15, 2019) ("By intercepting the transmissions of Body Chat app users, Hytto targeted its wrongful conduct at customers, some of whom Hytto knew, at least constructively, were residents of the U.S. Thus, the 'express aiming' requirement is satisfied.").

Plaintiff's allegations are in line with *Rancourt* and these other authorities. *First*, the Website is an "interactive web site[] where a user can exchange information with the host computer" because Website users can search for products, browse for products, and make

purchases via the Website. *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ("*Zippo*"); *see also* Compl. ¶ 16.

*Second*, Plaintiff alleges the "something more" required for jurisdiction by alleging Defendant collected "user activity data from Pennsylvania residents that utilize the Prime Website, and us[ed] that data 'for the purpose of thereby realizing pecuniary benefit' by 'tailor[ing] advertisements and content to increase user engagement' in Pennsylvania therefore increasing its pecuniary gain." Compl. ¶ 13. And Defendant has generated revenue through its Pennsylvania-based contacts by disclosing users' Pennsylvania-based communications to third parties for marketing and advertising. Compl. ¶¶ 43, 54, 55. Defendant has also "continued to conduct customer outreach including direct online outreach, marketing and sales, located in the Commonwealth of Pennsylvania," including the aforementioned advertising and sales of its products. *Id.* ¶ 11.

*Third*, Plaintiff alleges specific personal jurisdiction exists because Defendant caused harm or tortious injury in the forum by "intercept[ing] and collect[ing] user activity data of Pennsylvania residents who have the Prime Website" in violation of WESCA. Compl. ¶ 14. In *Johnson*, 2021 WL 3602214, at *1, the court noted that, had plaintiff sufficiently alleged a wiretapping claim, there would be personal jurisdiction over the defendant. The same applies here. Compl. ¶¶ 8, 14.

In sum, Defendant "purposefully availed" itself of the privilege of doing business in Pennsylvania.

Defendant argues that Plaintiff has "failed to sufficiently plead that this marketing is more than a benefit of successfully accessing the United States as a national market." MTD at 9-10. Defendant cites *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009) where the court found that although the defendant's "efforts to exploit a national market

necessarily included Pennsylvania as a target" that did not amount to purposeful availment because "any connection … to Pennsylvania merely was a derivative benefit of its successful attempt to exploit the United States as a national market." As an initial matter, it does not matter whether Defendant sold products or targeted marketing in other states because "[t]here is no *per se* requirement that the defendant *especially* target the forum in its business activity." *Curry v. Revolution Labs, LLC,* 949 F. 3d 385, 399 (7th Cir. 2020) (emphasis added). Rather, Plaintiff is only required to allege Defendant knew "that the target of its allegedly wrongful conduct is located in [Pennsylvania]," which Plaintiff has done. *Morphotrust USA LLC v. Identrix, LLC*, 2016 WL 3512131, at *7 (D. Mass. June 21, 2016). Regardless, Defendant's marketing scheme is heavily involved with Pennsylvania because it actively procures the interception of Pennsylvania users' communications and uses the content collected to generate targeted advertisement and revenue in Pennsylvania. Compl. ¶¶ 13, 14, 43, 54, 55. Further, by engaging in these acts, Defendant injures Pennsylvania Website users under WESCA. *Id.* Defendant's actions are therefore more involved that the defendant's actions in *D'Jamoos*, 566 F.3d at 103-104, where all the defendant did was manufacture a plane that followed FAA guidelines that could not be excluded from Pennsylvania airspace.

*Zippo* is also instructive. There, the court addressed the defendant's argument that its contacts with the forum were fortuitous by noting the defendant "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords. Dot Com knew that the result of these contracts would be the transmission of electronic messages into Pennsylvania. The transmission of these files was entirely within its control." *Zippo*, 952 F. Supp. at 1126. The court further noted that the defendant was under "no obligation to sell its services to Pennsylvania residents" and had it not wanted to be subject to jurisdiction in the forum, it "could have chosen

not to sell its services to Pennsylvania residents." *Id.* at 1127-26. Similarly, Defendant chose to continue procuring the third parties to intercept Pennsylvania users' communications, knowing their communications would be intercepted, violating WESCA. If Defendant wanted to avoid being subject to specific personal jurisdiction, it could have prevented the interception of Pennsylvania users' communications.

Finally, Defendant argues that its marketing activities, which directly involved the interception of Plaintiff's communications, are not sufficient contacts because "Prime's sales and marketing are not the subject of Plaintiff's claim." MTD at 9. Defendant mischaracterizes Plaintiff's allegations. Plaintiff does not allege that the contents of Defendant's marketing are the relevant contacts with the forum. *See* Compl. ¶¶ 11, 13. Instead, Plaintiff argues that Defendant's marketing scheme involved its procurement of Meta and Google to intercept Pennsylvania users' communications. *Id.* Therefore, Plaintiff's claims are directly related to Defendant's marketing and sales in Pennsylvania.

Defendant does not challenge other prongs of test, and therefore it is not permitted to do so on reply. *See Laborers' Int'l Union v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief."); WILLIAM W. SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 12:107 (2005) ("It is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than [those] presented in the moving papers.").

#### 2. *Application Of The Calder Effects Test Is Inconsequential To The Court's Exercise Of Specific Jurisdiction Over Defendant*

Defendant argues that if the Court were to apply the *Calder v. Jones* effects test to assess specific personal jurisdiction, the Court should find it cannot assert specific personal jurisdiction

over Defendant. MTD at 11. However, this is inconsequential because courts can find specific personal jurisdiction under either the traditional test or the *Calder* test. *PowerHouse Communications, LLC v. Midstate Communication Contractors, Inc., & Clayton Lawrence*, 2024 WL 4253347, at *6 (M.D. Pa. Sept. 20, 2024). "[I]t is not uncommon for a court to dismiss intentional tort claims for want of jurisdiction under the 'effects' test while finding jurisdiction proper as to other claims under the traditional test." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 189 (3d Cir. 2024). In other words, meeting either test will suffice.

Here, the Court should still findg specific personal jurisdiction over Defendant because Plaintiff has demonstrated that Defendant's contacts amount to purposeful availment under the traditional test. Argument § I.A.1, *supra*. Therefore, the Court should find specific personal jurisdiction over Defendant.

#### *3. Alternatively, The Court Should Direct The Parties To Engage In Jurisdictional Discovery*

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction … courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us, Inc.,* 318 F. 3d 446 at 456 (cleaned up). "In other words, [i]f a plaintiff presents factual allegations that suggest 'with reasonably particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Levy v. Jaguar Land Rover North Am., LLC.,* 2020 WL 563637, at *7 (D.N.J. Feb. 4, 2020) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F. 2d 1217 at 1223 (3d. Cir. 1992)).

Here, at a minimum, Plaintiff has made a colorable claim of jurisdiction and should be permitted to seek discovery to establish the extent to which Defendant collects data from Pennsylvania residents and utilizes hyper-targeting based on results therefrom. Thus, if the Court

finds that Plaintiff's allegations are insufficient to establish jurisdiction, it should direct the parties to conduct jurisdictional discovery and submit supplemental briefing thereafter.

## III. PLAINTIFF PLAUSIBLY ALLEGES A VIOLATION OF THE WESCA

### A. Plaintiff Plausibly Alleges The Contents Of Her Communications Were Intercepted

Defendant argues that Plaintiff's claim under WESCA fails because she "does not allege that she provided any highly sensitive personal information on Prime's website," but instead that she searched for "drink flavors" via the search bar which does not amount to "contents of a communication." MTD at 20-21. Defendant's argument fails because search terms typed by a user into a website's search bar amount to "contents of communication" under WESCA.

WESCA broadly defines "contents" to include "any information concerning the substance, purport, or meaning of that communication." 18 Pa. Cons. Stat. § 5702. Courts in this Circuit have found information entered by website users into a website that gets intercepted qualifies as "contents" under the statute. For example, in *Oliver v. Noom, Inc.*, 2023 WL 8600576 (W.D. Pa. Aug. 22, 2023), plaintiff alleged that the defendant used software code to record all her actions on defendant's website, including the information she entered into the website as part of answering an online quiz. *Id.*, at *7. The court determined that because the defendant's software collects all website user actions, including information plaintiff inputted when taking the quiz, plaintiff's allegations were "sufficient to establish that [defendant] intercepted 'contents' of plaintiffs' communications" at the motion to dismiss stage. *Id.* Notably, although the information plaintiff alleged to have input into the website when answering the quiz involved much more sensitive information compared to this case—namely the plaintiff's "height, weight, gender, age," etc., the court did not rest its decision on the sensitivity of the plaintiff's contents of communication. *See*

*id.* Instead, the decision was based on plaintiff having alleged inputting answers to the quiz questions then captured by the software.

This principle was exemplified in *Emmett v. Delta Air Lines, Inc.* 2024 WL 2816502, at *8 (W.D. Pa. June 3, 2024) and *Schnur v. JetBlue Airways Corporation* 2024 WL 2816552, at *8 (W.D. Pa. June 3, 2024). In those cases, the court found allegations that the defendants' software captured plaintiffs' interactions on the respective websites, including "text entry," were sufficient to plausibly allege the data recorded was "contents." *Id*. Further, in *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023), the court held "information about the webpages [] viewed and searches [] conducted" constituted the "contents" of the communication under the WESCA. Finally, in *Braun v. Philadelphia Inquirer, LLC*, 2023 WL 7544160, at *5 (E.D. Pa. Nov. 13, 2023), the court rejected the defendant's "argument to the effect that URLs are not substantive content of a communication."

Here, Plaintiff alleges she searched for specific terms via the Website search bar and that Meta and Google intercepted those communications through detailed, full-string URLs and Meta's "Search" event. Compl. ¶¶ 8, 58-61. Specifically, Plaintiff alleges she "used the search bar on the Website to search for different Prime drink flavors such as 'ice pop,' 'meta moon,' and 'blue raspberry.'" *Id.* ¶ 8. Plaintiff further provided screenshots of the Meta Pixel Helper tool displaying that the Meta Pixel generates two types of events on the Website when a user affirmatively enters text in the search bar, which is what Plaintiff did. *Id.* ¶ 58. The PageView event shares metadata on the page the user is currently viewing by sharing a detailed, full-string URL of the page the user is on. After the user enters text into the search bar and enters the search, a URL including the terms "search?q=meta-moon" is intercepted by Meta. *Id.* ¶ 59 (Figures 1-2). Plaintiff also alleges the Meta Pixel generates a Search event that captures and intercepts the exact search terms a user

input in the Website's search bar. *Id.* ¶ 60 (Figures 3-4). Therefore, Plaintiff alleges third parties Meta and Google—as procured by Defendant—intercepted the contents of her communications with the Website. *See also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication.").

Defendant relies on *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58 (W.D. Pa. 2023), for the assertion that "[k]eystrokes, website movement, and similar activity do not constitute 'contents of a communication' under the meaning of the" statute. MTD at 21. However, the section of the decision that Defendant cites only includes the court's discussion of "Mouse movements and clicks" which the court found did not amount to content because it was "routing information." *Cook*, 689 F. Supp. 3d at 70. However, the *Cook* court went on to analyze URLs, which the *Cook* court reasoned could amount to content. *Id.* at 71. *See also James*, 701 F. Supp. 3d at 956 (making similar distinction between pages viewed and searches performed versus mouse clicks and keystrokes). As Plaintiff alleges her searches and pages visited, rather than simply mouse clicks and keystrokes, were intercepted, *Cook* is inapposite.

Defendant then cites *Goldstein v. Costco Wholesale Corporation*, 559 F. Supp. 3d 1318 (S.D. Fla. 2021) for the argument that "keystrokes and mouse movement are similar to customer movements" observable by store employees in person and are therefore not contents of communication. MTD at 21. Again, as Plaintiff alleges her searches and pages visited, rather than simply mouse clicks and keystrokes, were intercepted, *Goldstein* is inapposite. *See*, *e.g.*, Compl. ¶¶ 8, 58-61. Regardless, *Goldstein* was based on the Florida wiretapping statute, whose definition of "electronic communication" specifically excludes "[a]ny communication from a[] … device

which permits the tracking of the movement of a person or an object." Fla. Stat. § 934.02(12)(c). The WESCA contains no similar exclusion from its definition of "electronic communications." 18 Pa. Cons. Stat. § 5702; *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) (distinguishing *Goldstein* from case under California wiretapping statute for similar reasons).

Defendant also cites to *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222 (M.D. Pa. 2023), for the same argument (MTD at 21), but *Farst* is equally unhelpful. While analyzing whether the plaintiff had Article III standing, the *Farst* court analyzed the plaintiff's claims in the context of an intrusion upon seclusion claim. *Farst*, 700 F. Supp. 3d at 229. In that specific context, the court found the plaintiff's "keystrokes, mouse clicks, and search history … [were] simply not the type of highly offensive act" sufficient to allege he suffered an intrusion upon seclusion. *Id.* at 230. This analysis is irrelevant to the question of whether the information Plaintiff alleges was intercepted amounts to content. *See Oliver*, 2023 WL 8600576, at *7 (finding that the information entered into the website amounted to contents, and resting that decision not on the sensitivity of the information, but instead, that information the plaintiff input was captured by the software); *Emmet*, 2024 WL 2816502 at *8 (not considering the sensitivity of information, and not even discussing what was searched on the website); *Schnur*, 2024 WL 2816552 at *8 (same). And again, as Plaintiff alleges her searches and pages visited, rather than simply mouse clicks and keystrokes, were intercepted, *Farst* is inapposite.

Finally, Defendant states that "[u]nlike the plaintiff in *Popa*, Heaven does not allege that she provided any highly sensitive personal information on Prime's website." MTD at 21. As an initial matter, Defendant does not provide a citation to the *Popa* case, so it is unclear whether Defendant refers to *Popa v. PSP Grp., LLC*, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023), or *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022). If the former, as with *Farst*,

this decision's analysis of Article III standing is irrelevant to whether the information Plaintiff alleges was intercepted amounts to content. If the latter, this decision did not analyze the "contents" issue.

In sum, Plaintiff has plausibly alleged that the contents of her communications were intercepted because she affirmatively entered text and searched that text via the Website, and she plausibly alleges the relevant software intercepted those exact search terms.

### B. Plaintiff May Pursue A Civil Action For The Violation Of The WESCA

Defendant argues that Plaintiff fails to state a claim under WESCA because she does not plead "or demonstrate[] any injury or harm" that would "allow her to pursue a claim under WESCA." MTD at 22. Defendant errs by conflating the requirements for Article III standing with the requirement to pursuant a civil action under the WESCA

The WESCA allows for "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter" to pursue a civil action "against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication." 18 Pa. Cons. Stat. § 5725. Notably absent from this provision is any requirement that Plaintiff allege an "injury" or "harm." And while the party asserting federal jurisdiction must always allege Article III standing, that is distinct from the requirements for a cause of action. *Cook*, 689 F. Supp. 3d at 63 (noting "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law.'") (cleaned up).

Here, Plaintiff has sufficiently alleged a WESCA claim because she has alleged that Defendant intentionally procured third parties, Meta and Google, to intercept the contents of her communications. Compl. ¶¶ 33, 86, 55, 56-60. Nothing else is required.

Defendant relies on numerous cases for its argument that Plaintiff has not alleged an injury for her WESCA claim and therefore, her claim fails. MTD at 22-24 (citing *Massie v General Motors, LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022); *TransUnion LLC*, 594 U.S. at 426; *Cook*, 689 F. Supp. 3d at 65; *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 351 (E.D. Pa. 2023); *Farst*, 700 F. Supp. 3d at 230; *Lightoller v. Jetblue Airways Corporation*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023)). However, *none of these cases* support Defendant's argument because they all analyze the injury-in-fact standing question, *not* whether the plaintiffs plausibly plead a claim under WESCA. *Id.* Therefore, Defendant's attempt to impose the standing standard on Plaintiff in the context of pleading a WESCA claim fails. *See Cook*, 689 F. Supp. 3d at 63.

### C. Defendant Has Not Met Its Burden To Show Plaintiff Consented To The Interception Of Her Communications

Defendant contends that Plaintiff consented to the interception of her communications on the Website. "[C]onsent is an affirmative defense for which [D]efendant bears the burden of proof." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). Defendant cannot meet its burden here.[1]

[1] In addition, "Pennsylvania district courts have held that "whether Plaintiffs gave consent to disclosure under the PA Wiretapping Act would appear to be factual in nature—involving issues of factual dispute and interpretation," making such an issue inappropriate to resolve on a motion to dismiss. *Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2024 WL 3875785, at *9 (N.D. Cal. Aug. 16, 2024) (citing *Braun*, 2023 WL 7544160, at *5).

*1. Defendant Cannot Show Plaintiff Consented To The Website's Privacy Policy, Or Consented To The Wiretapping Just By Visiting The Website*

Defendant advances two arguments as to how Plaintiff consented to the wiretapping by visiting the Website. *First*, Defendant seems to argue that Plaintiff consented to the wiretapping simply by visiting the Website. *See* MTD at 24 ("Any internet user in the modern age has a reasonable expectation that cookies may be used to track the user's activities on a website."). Multiple courts have rejected similar arguments in the context of WESCA and other wiretapping claims, and Defendant cites no case pointing the other way. *See*, *e.g.*, *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *3 (N.D. Cal. Feb. 13, 2024) ("Honda also argues that they knew or should have known that an unknown third-party was intercepting their communications when they used Honda's chat function. Honda provides the Court with no authority to support this position."); *Yockey*, 2024 WL 3875785, at *8-9; *In re Google Inc.*, 2013 WL 5423918, at *14 (N.D. Cal. Sept. 26, 2013) ("Google has cited no case that stands for the proposition that users who send emails impliedly consent to interceptions and use of their communications by third parties other than the intended recipient of the email."); *cf. James v. Global TelLink Corp.*, 852 F.3d 262, 267-68 (3d Cir. 2017) (finding no assent to arbitration agreement where plaintiffs "neither received GTL's terms of use, nor were they informed that merely using GTL's telephone service would constitute assent to those terms").

*Second*, Defendant contends Plaintiff expressly consented to the wiretapping because Defendant's privacy policy "contains clear statements that Prime may conduct the collection of information about which Plaintiff complains." MTD at 24 (cleaned up). As an initial matter, the WESCA requires *prior consent* to any interception. 18 Pa. Cons. Stat. § 5704(4). Thus, unless Defendant can show that Plaintiff was made aware of and agreed to Defendant's privacy policy

prior to the interception of her information, any such "consent" is invalid. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (finding after-the-fact consent was invalid for claim brought under the California wiretapping statute). And, while *actual* knowledge is not required, Defendant still must show *constructive* knowledge of the privacy policy (*i.e.*, notice and assent). "[M]erely having a privacy policy online" is insufficient. *See Cody v. Ring LLC*, --- F. Supp. 3d ---, 2024 WL 735667, at *4 (N.D. Cal. Feb. 22, 2024); *see also Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 118 (W.D. Pa. 2019) ("The content of a webpage and agreement page determines whether a defendant adequately provides inquiry notice."). To that end, Defendant has not and cannot show that, prior to any interception, it put Plaintiff on constructive notice of its privacy policy, and Plaintiff therefore did not assent to the same.[2]

*Oliver* is instructive. There, the defendant's website contained a browsewrap agreement that did not require users to affirmatively assent to its Terms of Use and Privacy Policy, but instead, included the hyperlinks to the terms "buried at the bottom [of the website with] tiny, non-contrasting font that [was] easy to overlook." *Oliver*, 2023 WL 8600576 at *9. The court found the defendant did not show that the plaintiffs "knew or should have known that their activity on the website was being recorded" because the website's browsewrap was not sufficient to put the plaintiffs on notice of the Privacy Policy and Terms of Use. *Id.*

This case is just like *Oliver*. A link to Defendant's privacy policy appears only on the bottom of the Website, and a user must scroll down to the very bottom to see it:

---

[2] Notably, Defendant does not once claim that its notice of its Privacy Policy was conspicuous, nor does Defendant describe *where* on the Website it even provides notice of its Privacy Policy. *See* MTD at 4, 24-25 (omitting facts about where the Privacy Policy hyperlink is located and whether any accompanying warning language is provided). Defendant's failure to submit the design and content of its Website requires automatic denial of its motion. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023) (finding defendant failed to meet its burden to provide notice of terms where "Amazon did not provide the court with a copy or description of any such notice").




**Figure 1**[3]

This hyperlink is a classic browsewrap agreement that is insufficient to establish notice of or consent to the privacy policy. *Oliver*, 2023 WL 8600576, at *9 (finding "a reasonable person could browse Noom's website without ever being on notice of its purported Privacy Policy and Terms of Use" where "the link to Noom's Privacy Policy and Terms of Use is "buried at the very bottom of the website"); *see also*, *e.g.*, *Vincent v. National Debt Relief LLC*, 2024 WL 3344227, at *11 (S.D.N.Y. July 8, 2024) (finding lack fo notice of terms where the "hyperlink itself is not immediately visible to a visitor to the Website, and is visible only after the user has to scroll through several sections of content containing promotions for Defendant's product"); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014) ("Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks

[3] This screenshot was obtained via the WayBack Machine service and shows a capture of the Website from February 6, 2024. Plaintiff alleges she used the Website in February 2024. Compl. ¶ 8.

to terms and conditions to which they have no reason to suspect they will be bound."). Moreover, the hyperlink contains no language linking the use of the Website to the acceptance of the privacy policy, meaning even if Plaintiff had notice of the hyperlink (she did not), there was no consent to it. *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022) (hyperlink insufficient for consent because "the notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement" and "[t]he notice did not do so here").

Even on the checkout page, Defendant does not procure users' consent to the privacy policy. In fact, a hyperlink to the Privacy Policy *did not exist* on the Website at the checkout page.




**Figure 2**[4]

Clearly, the fact that no hyperlink to the privacy policy appears on this page makes even making a purchase insufficient for consent. And, perhaps recognizing this failure, Defendant has

---

[4] Plaintiff's counsel obtained this screenshot in the course of investigating Plaintiff's claims and preparing the Complaint.

modified its Website since this action commenced and now includes its Privacy Policy hyperlink below its "Pay Now" button on the checkout page:




**Figure 3**

Thus, Defendant fails to demonstrate it put Plaintiff on constructive notice of the Privacy Policy, and thus fails to show Plaintiff expressly or impliedly consented to the wiretapping.

2. *Defendant Cannot Show Plaintiff's Alleged Consent to Meta's Policies Equated To Her Consent To The Interception Of Her Communications On The Website*

Defendant also argues that, as a Facebook user, Plaintiff "previously agreed to Meta's policies, which 'notify Facebook users that Meta collects and uses their personal data, including data about their browsing behavior on some third-party websites, at least in part for targeted advertising.'" MTD at 26-27. Therefore, according to Defendant, Plaintiff "explicitly consented" to Meta's collection of her browsing activity and even her personal information." MTD at 26. As

an initial matter, this argument affects only Plaintiff's claims related to Meta, *not* Google. *See*, *e.g.*, Compl. ¶¶ 2, 4-5, 8, 46-56, 73. Regardless, Defendant is wrong.

Defendant cites *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 786 (N.D. Cal. 2022), to argue that when a person signs up for a Facebook account, they "agree to Meta's Terms of Service, Data Policy, and Cookies Policy," meaning Plaintiff was on notice that Meta collects her personal data on "some third-party websites." MTD at 26-27. However, *In re Meta Pixel* does not support Defendant's argument because it stands for the idea that "consent must be actual," meaning that the "disclosures must 'explicitly notify' users of the practice at issue." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793 (internal citation omitted). The *In re Meta Pixel* court stated that the "test is whether a reasonable user who viewed Meta's disclosures would have understood that Meta was collecting the information at issue." *Id.* And when applying this test to the facts of the case, the court found that Meta's "generalized notice" was not sufficient to establish consent to interception of the plaintiff's health data in particular. *Id.* at 793. Further, the court relied on Facebook's separate representation to users that it "requires" any third-party to have "lawful rights to collect, use and share your data before providing any data to us." *Id.* at 794.

Similarly, here, Meta's terms would not be sufficient to put Plaintiff on notice of *Prime's* particular practices. As Defendant describes, Meta's policies will put Facebook users on notice that Meta "collects and uses their personal data" collected on "*some* third-party websites, at least in part for targeted advertisement. MTD at 26-27 (emphasis added). *First*, consent to Meta's interception of Plaintiff's communications *on Prime's Website* in particular (as opposed to any other website) is not clear from Meta's terms because Meta does not specify which websites it partners with and collects data from. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793. Therefore, even assuming Plaintiff did consent to Meta's terms, she would have no idea,

from those terms, that *Prime* contracted with Meta and procured Meta's Pixel to capture her communications via the Website. *Second*, Meta's terms also do not "explicitly notify users of the practice at issue," *id.*, because the terms are not specific to the collection of contents of communications, which is the practice at issue here. *Third*, even if Defendant could demonstrate that Plaintiff agreed to Meta's terms, the scope of that consent would be limited by Meta's Data Policy, turning on whether Defendant was entitled to share the data in the first instance. Here, given the application of WESCA to the disclosures at issue, it was not.

Therefore, Defendant has also failed to establish that Plaintiff consented to its practices via Meta's terms.

## IV. DEFENDANT HAS NOT MET ITS BURDEN OF SHOWING META AND GOOGLE SHOULD ARE NECESSARY PARTIES WHO MUST BE JOINED

Defendant argues that "Plaintiff's Complaint should be dismissed due to her failure to name necessary parties Meta and Google" pursuant to Fed. R. Civ. P. 12(b)(7). MTD at 27. Defendant's argument fails because (1) Defendant fails to meet its burden to show Meta and Google should be joined; and (2) even if it met its burden, joiner, not dismissal, would be the appropriate action.

Fed. R. Civ. P. 19 concerns whether the joinder of a party is compulsory. *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). The three step test to determine whether an absent party should be joined includes determining if the party is (1) necessary and should be joined, (2) if joinder is feasible "inasmuch as it would defeat diversity of citizenship," and (3) if joiner is not feasible, the determination will be that the "action cannot go forward." *Id.* In other words, if the party is considered a necessary party, the party should be joined if feasible. *Bank of America National Trust & Savings Association v. Hotel Rittenhouse Associates*, 844 F.2d 1050, 1053–54 (3d Cir.1988)). But dismissal of an action will only be appropriate if a necessary party's joiner is *not feasible*. *General Refractories*, 500 F.3d at 312;

*Whyham v. Piper Aircraft Corp.*, 96 F.R.D. 557, 560 (M.D. Pa. 1982) ("Subdivision (b) addresses the more difficult question of whether to dismiss a lawsuit when the absent person's joinder is impossible.").

"[A] party is 'necessary' if, in its absence, (1) the court could not accord complete relief among the existing parties; or (2) the absent party claims an interest relating to the subject matter of the action so that disposing of the action in his absence would (i) impair its ability to adequately protect its interest, or (ii) leave an existing party susceptible to a substantial risk of incurring inconsistent obligations." *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011) (citing Fed. R. Civ. P. 19(a)). A defendant "bears the burden of showing why an absent party should be joined under Rule 19." *Id.*

Here, Defendant's request is inappropriate because, to warrant dismissal, Meta and Google's joinder must *not be feasible*—"inasmuch as it would defeat diversity of citizenship." *General Refractories*, 500 F.3d at 312. But Defendant admits that joining Meta and Google would not defeat diversity of citizenship. MTD at 30-31. Without showing that joinder of Meta and Google is not feasible, dismissal of the case is unwarranted.

Aside from Defendant failing to show this case should be dismissed for failure to join Meta and Google, Defendant also fails to show they are necessary parties under Fed. R. Civ. P. 19. Defendant argues that Meta and Google are necessary parties by claiming they have "an interest in the present litigation" because the Court will "implicitly decid[e] whether use of Meta Pixel or Google Analytics is a violation of Pennsylvania law." MTD at 30. But that is wrong.

In *Sullivan-Blake v. Fedex Ground Package System., Inc.*, 2020 WL 518139 (W.D. Pa. Jan. 31, 2020), the court found that the companies that contracted with the defendant, FedEx, were not necessary parties under Rule 19 because they did not have a direct stake in the litigation. *Id.*, at

*3. The plaintiffs sued FedEx alleging they "were not paid overtime compensation in accordance with the Fair Labor Standards Act." *Id.* at *1. FedEx argued that the companies had a "direct interest in the outcome" of the case and were therefore necesalso sary parties because they directly employed and paid the plaintiffs. *Id.* FedEx argued that the outcome of the litigation could result in the companies having to "change their pay practices or risk being sued by their current employees" and therefore, the companies had a "direct interest in defending their pay practices." *Id.* at *3. The court rejected these arguments, finding that FedEx needed to show that a reasonably likely outcome of the case could likely preclude "the absent party with respect to an issue material to the absent party's rights or duties." *Id.* The court further reasoned that a party would not be necessary just because the judgement in the case "might set a persuasive precedent in any potential future action against" the absent party. *Id.* Finally, the court found that it would be "premature" for it to "determine what effect, if any, an adverse judgement against FedEx in this case may have on subsequent, yet to be filed, lawsuits against" the companies. *Id.*

By contrast, in *Whyham v. Piper Aircraft Corp.*, 96 F.R.D. 557 (M.D. Pa. 1982), the Court found that two companies who owned and maintained a plane that crashed (and was the subject of the lawsuit) were necessary parties to the litigation because "their presence [was] crucial to determining the important issue of liability." *Id.* at 561. The court reasoned, "[i]f the jury accept[ed] Defendant's argument that" the two companies could be "partly liable, if not entirely liable, for damages by failing to properly maintain and inspect the plane," the companies would be "at least partly liable for damages." *Id.* at 561, 558. Therefore, the court found that not including the two companies as parties "may, as a practical matter, impair or impede their ability to protect their interest." *Id.* at 561.

Here, although Defendant procured the Trackers for use on the Website, it is solely Defendant's actions that amount to a violation under WESCA. That is because Defendant was the one who (i) chose to implement the Trackers on the Website, Compl. ¶¶ 24, 46, 57; (ii) chose to procure the Trackers to intercept user's communications, Compl. ¶¶ 30; and (iii) chose to do so without obtaining consent from its Website users, Compl. ¶¶ 8, 73, 89. Therefore, a reasonable outcome of the case is that the Court will determine that *Defendant's procurement* of the Meta Pixel and Google Analytics, in the manner in which Defendant procured them, caused Defendant to violate WESCA. A likely outcome will *not* be that the Meta Pixel and Google Analytics themselves are technologies that uniformly violate WESCA when employed on any website. *See Sullivan*, 2020 WL 518139, at *3. Further that the outcome of this case might be persuasive in a future action against Meta or Google under WESCA would not make Meta and Google necessary parties and would be a premature determination by the court. *Id.* This case is unlike *Whyham*, where the court found the parties were necessary since their failure to properly maintain and inspect the plane that crashed might have meant they were at least partially liable for damages. *Whyham*, 96 F.R.D. at 558. Here, Meta and Google had nothing to do with the way Defendant used their technologies on the Website and therefore would not share in the liability. *See id*. As such, Meta and Google are not necessary parties that require joinder.

Defendant argues that because the Complaint focuses on how Meta and Google's technologies work and intercept communications, Meta and Google are central to Plaintiff's claims, and the Court "cannot make rulings as to whether Prime violated WESCA … without

implicitly deciding whether use of Meta Pixel or Google Analytics is a violation" of WESCA—therefore making Meta and Google necessary parties. MTD at 29-30.[5]

That the Complaint thoroughly explains how the Meta Pixel and Google Analytics work, and specifically how they worked on the Website, does not mean that Google and Meta have an interest in the matter. The reason for including the detailed explanation is so Plaintiff can plausibly allege that Defendant procured these third parties to intercept Plaintiff's communications. As described above, in deciding this action, the Court would not be deciding whether using the Meta Pixel or Google Analytics would generally be a violation of WESCA, but only whether *Defendant's specific procurement* of these technologies constitutes a violation.

Defendant relies on *H. H. Robertson Co. v. Lumbermen's Mut. Cas. Co.*, 94 F.R.D. 578, 578 (W.D. Pa. 1982) for its argument that Meta and Google will be affected "as a practical matter." MTD at 30. But this case is distinguishable from the present case. In *H.H. Robertson*, the plaintiff sued the defendant to recover payment for supplies it provided. 94 F.R.D. at 578. If the defendant lost the action and had to repay the materials, the defendant would have been able to "recoup this loss from Grignano," the general contractor, because the defendant and Grignano had an indemnity agreement. *Id.* at 580. Therefore, even though Grignano would not have been "bound by the prospective judgment in the case in a technical sense," he would have been impaired as a "practical matter." *Id.* The same cannot be said here, given Defendant's failure to identify any sort of similar relationship between itself and Meta or Google.

[5] Notably, Defendant fails to cite to any similar cases where the court found additional parties were deemed necessary parties.

In sum, Defendant has not met its burden of showing that Meta and Google are necessary parties, much less that their joinder is unfeasible necessitating the dismissal of the case. Therefore, Defendant's motion to dismiss for failure to join Meta and Google should be denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied. To the extent the Court grants any aspect of Defendant's Motion, Plaintiff should be permitted leave to amend.

Dated: September 30, 2024

Respectfully submitted,

By: */s/ Mark C. Atlee*
Mark C. Atlee

**ATLEE HALL, LLP**
Mark C. Atlee (PA No. 204627)
415 North Duke Street
Lancaster, PA 17602
Telephone: (717) 393-9596
Facsimile: (717) 393-2138
E-mail: mcatlee@atleehall.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*pro hac vice* forthcoming)
Max S. Roberts (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: aleslie@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, I electronically filed the foregoing document with the Court's CM/ECF system, which will provide e-mail notice to all counsel of record.

**FROST BROWN TODD LLP**
Tara Hopper Rice
Union Trust Building
501 Grant Street, Suite 800
Pittsburgh, Pennsylvania 15219
trice@fbtlaw.com

By: */s/ Mark C. Atlee*
Mark C. Atlee