**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHANTAY HEAVEN, individually and on behalf of all others similarly situated, | : | CIVIL ACTION NO. |
| Plaintiff, | : | Case No: 2:24-cv-04754 |
| v. | : | |
| PRIME HYDRATION LLC, | : | |
| Defendant. | : | |

**DEFENDANT PRIME HYDRATION LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Attempting to avoid the inadequacies of her claim, Plaintiff resorts to a conundrum of circular logic and outright contradictions in her Opposition to Prime's Motion to Dismiss. Plaintiff filed a lawsuit to recover monetary damages from Prime yet refuses to assert that she has sustained any concrete harm. She ignores that Prime removed this case under the Class Action Fairness Act ("CAFA"). She bases her entire claim on Facebook and Google's tracking technologies, yet simultaneously (1) downplays or entirely disregards Plaintiff's prior express consent to having Facebook and implied consent to having Google track her every move on the internet for the past 10 years, (2) complains about the alleged insufficient notice of Prime's privacy policy when a user purchases an item – ***even though she admittedly never made a purchase on Prime's website,*** and (3) blames Prime exclusively for Facebook and Google's collection of her search information, while arguing that Facebook and Google should not be responsible for their own technology. Plaintiff only entered search terms on Prime's website, and that is the only information that could have been captured from her use of its website. She has no viable claim against Prime as a matter of law.

## ARGUMENT

### I. Article III Standing

Though she seeks to recover money damages from Prime, Plaintiff paradoxically takes no position on whether she has any concrete injury sufficient for Article III standing. Instead, she argues that Prime raising the standing defense is contrary to cases in the Northern District of Illinois. Plaintiff largely ignores caselaw within the Third Circuit and that this Court has original jurisdiction under CAFA. But in fact, courts within the Third Circuit have expressly rejected Plaintiff's arguments in these circumstances. *See Johnson v. Patenaude & Felix, A.P.C.*, 2021 WL 3260064 (M.D. Pa. July 29, 2021); *Katz v. Six Flags Great Adventure, LLC*, 2018 WL 3831337 (D.N.J. Aug. 13, 2018); *Brahamsha v. Supercell OY*, 2017 WL 3037382 (D.N.J. July 17, 2017).[1]

In *Brahamsha*, as in this case, the court rejected plaintiff's argument that defendant's removal and subsequent motion to dismiss for lack of standing were "inconsistent and indicate that Defendant lacked a reasonable basis for removal in the first instance." *Id*. at *5.[2] Here, as in *Brahamsha*, it is not "incumbent upon" Prime "to anticipate how this Court would rule on a Rule 12(b)(1) motion." *Id*. at *6. If the Court determines that Plaintiff did sufficiently plead a concrete injury, then Prime is entitled to "have its claims heard in the federal courts, as it is admittedly entitled to do under CAFA." *Id*. Further, this Court has the authority to evaluate standing, as "the Court would be required to evaluate Plaintiff's Article III standing to sue even if the parties had failed to raise it in their motions because '[t]he federal courts are under an independent obligation to

[1] Prime's Opposition to Plaintiff's Motion to Remand is incorporated herein by reference.

[2] In this case, as in *Brahamsha*, because "Plaintiff does not contest Defendant's CAFA basis for removal, [] the Court accepts Defendant's allegations as true, without the need for evidentiary support." *Id.* at *6 (citing *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014)). "Accordingly, looking to Defendant's CAFA allegations, Defendant possessed an objectively reasonable basis for removal of this case before this Court." *Id.*; *see also Baccay v. Heartland Payment Sys., LLC*, 2019 WL 337585, at *8 (D.N.J. Jan. 28, 2019) ("The entire case need not be remanded, however, as Plaintiff does not contest Defendant's CAFA basis for removal of these state law claims, so subject matter jurisdiction over these claims exists.") (citations omitted).

examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.'" *Id*. at *2 (quoting *United States v. Hays,* 515 U.S. 737, 742 (1995)); *see also Johnson*, 2021 WL 3260064, at *3; *Katz,* 2018 WL 3831337, at *5.

This Court's analysis of standing is both appropriate and necessary for Prime to "have its claims heard in the federal courts, as it is admittedly entitled to do under CAFA." *Brahamsha,* 2017 WL 3037382, at *6. And simply put, Plaintiff's allegations are not sufficient to establish standing under Article III. Browsing activities that do not include the collection of personal or confidential information cannot form the basis of a concrete injury under WESCA or Article III, and dismissal is appropriate. *See Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222 (M.D. Pa. 2023); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023).

## II. <u>This Court lacks specific jurisdiction over Prime.</u>

### A. *Prime is not subject to specific jurisdiction under the traditional test.*

Plaintiff acknowledges that the Third Circuit requires Prime to have "intentionally interact[ed] with [Pennsylvania] via its website to show purposeful availment" plus "something more"[3] to establish specific jurisdiction. But tellingly, she relies on nonbinding caselaw to argue that the "something more" is satisfied here. But those cases are easily distinguishable.

In *Rancourt v. Meredith Corp.*, 2024 WL 381344 (D. Mass. Feb. 1, 2024), the plaintiff filed a class action complaint alleging violations of the Video Privacy Protection Act and an analogous state law for disclosing his personal identifiable information ("PII"), including his geolocation, to third parties. Here, Plaintiff does not allege that Prime collected any PII, let alone used her PII to tailor advertisements. The Complaint does not allege that Prime knew where Plaintiff was physically located when she accessed its website. Plaintiff's allegation that she used

[3] Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint ("Pl's Response") at 4.

Prime's "Website to search for different Prime drink flavors"[4] fails to establish that Prime engaged in "something more" to show purposeful availment of conducting activities *in Pennsylvania*, as opposed to simply accessing an international market.

Likewise, *Doffing v. Meta Platforms*, Inc., 2022 WL 3357698 (D. Or. July 20, 2022), also relied upon by Plaintiff, actually supports ***granting*** Prime's Motion to Dismiss. In *Doffing*, the claimant sued Snapchat relating to a minor's use of the social media platform. In finding that Snapchat's contact with the forum was sufficient for personal jurisdiction, the Court's holding highlighted the distinction between interactive websites (*e.g.*, Snapchat) and retail websites (*e.g.*, Prime): "***[M]erely operating a website that is accessible from the forum state is insufficient on its own to subject a defendant to personal jurisdiction***…Snapchat is a highly sophisticated product that has been purposefully distributed to Oregon residents in the State of Oregon, where it is ***used as a means to maintain almost constant communication*** with Oregon residents and also collect and distribute Oregonian's personal information." *Id*. at *4 (emphasis added).

Here, by Plaintiff's own admission, Prime operates a retail website that Plaintiff accessed to research a product. Unlike *Doffing*, Plaintiff has made no allegation that Prime uses its website as "a means to maintain almost constant communications" with Pennsylvania residents. Under *Doffing*, Prime's mere operation of "a website accessible from [Pennsylvania]" is insufficient to establish personal jurisdiction. *Id*. Plaintiff failed to show that Prime directs its activities to Pennsylvania, and this case should be dismissed for lack of personal jurisdiction.[5]

[4] *Id.* at 11.

[5] Plaintiff's allegations also fail to satisfy the *Calder* analysis. As the Court stated in *Vonbergen v. Liberty Mut. Ins. Co.*, "absent some conduct by defendant directed at Pennsylvania rather than simply directed at plaintiff, Pennsylvania is not a reasonably foreseeable forum." 705 F. Supp. 3d 440, 449 (E.D. Pa. 2023) (citations omitted). Plaintiff cannot show that Prime's conduct was "aimed" at or "intentionally targeted" Pennsylvanian residents. She further fails to show that Prime knew that Plaintiff would suffer the brunt of the alleged harm from this technology in Pennsylvania. Plaintiff has not met the requirements of the *Calder* test, and exercise of specific jurisdiction over Prime is improper on this basis as well.

B. *Jurisdictional discovery is inappropriate.*

Given the Third Circuit's recent opinion in *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024), Plaintiff's request for jurisdictional discovery should be denied. In *Hassan*, the plaintiff alleged that defendant Papa Johns was subject to jurisdiction in Pennsylvania because Papa Johns had a store locater function on its website, advertised nationally, had stores in Pennsylvania, knew that Pennsylvania residents would use its website, and the alleged "interception" of plaintiff's data occurred in Pennsylvania. *Id*. at 191. As an alternative, the plaintiff requested jurisdictional discovery. The district court rejected these arguments, and the Third Circuit affirmed, both under the *Calder* test and the traditional test. *Id*. As the Third Circuit explained, the plaintiff's allegations of a widespread "wiretap" scheme were not sufficiently "aimed" at or tailored to Pennsylvania, as required for personal jurisdiction. *Id*.

Like in *Hasson*, Plaintiff Heaven did not allege that Prime's website is accessible only in Pennsylvania, that Prime deploys Meta Analytics or Google Pixel only to users who access its website while in Pennsylvania, or that Prime has tailored its website in any meaningful way to Pennsylvania or its residents. As in *Hasson*, Plaintiff's request for discovery will not remedy these deficiencies, which are fatal to Plaintiff's jurisdictional claims against Prime.

**III. <u>Plaintiff failed to sufficiently plead a claim under WESCA.</u>**

**A. Plaintiff's searches are not "communications" under WESCA.**

WESCA defines "contents" of a communication as "information concerning the substance, purport, or meaning of that communication." 18 Pa.C.S.§ 5702. "Contents" do "***not include record information regarding the characteristics of the message*** that is generated in the course of the communication." *Cook,* 689 F.Supp.3d at 68 (emphasis added). Merely browsing a website and entering innocuous search terms does not constitute a "communication." *Id*.

In *Cook*, the Western District highlighted the distinction between record location information and the substantive content of a communication, rejecting the plaintiff's cursory argument that "once you're on the website, you've communicated" for purposes of WESCA. *Id.* at 71. The *Cook* plaintiff navigated the website through cursor movements, mouse clicks, and searches; she did not enter any information or purchase any products. *Id.* at 70. The court held that such activity "does not plausibly reveal the substance of any communication." Rather, the activity is "routing information," and "[n]avigating through a website's multiple pages is not the substance of a communication." *Id.* Further, the court determined that typing search terms that correspond to "different physical locations of pages, documents, and files on [the website operator's] servers" is not a communication giving rise to a claim under WESCA. *Id*. at 71.

Like in *Cook*, Plaintiff Heaven alleges that she navigated Prime's site and searched for three Prime drink flavors. Also as in *Cook*, Plaintiff did not enter any personal information or purchase any items on the website.[6] First, Plaintiff's visit to the website, by itself, is insufficient to state a claim under WESCA. *Id.* at 71-72. Second, Plaintiff's search for three Prime flavors merely redirected her to different locations on Prime's website with different location identifiers. Such location identifiers "have classically been associated with non-content means of establishing communication." *Id.* at 71. "Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location." *Id*. at 70. Ruling otherwise would result in an "expansive interpretation [that] would impermissibly render the distinction between content and non-content in the statute superfluous." *Id*. at 72.

Plaintiff cites *Oliver v. Noom, Inc.*, 2023 WL 8600576, at *1 (W.D. Pa. Aug. 22, 2023), to argue that search terms are "contents of a communication" under WESCA. But *Noom* highlights

[6] Complaint at ¶ 8.

the very distinction between record information and substantive communications that is fatal to Plaintiff's claim in this case. The *Noom* plaintiffs alleged that the website "'records all website visitor actions, including information typed by the website users while on the website'" and "can include names, emails, phone numbers, addresses, social security numbers, date[s] of birth, and more[.]'" *Id.* at *1, *6. Even in those circumstances, the court held that the contents of communication inquiry is "'a case-specific one' that will largely depend on surrounding facts and context," and therefore, additional discovery was required to determine whether such information was "content" in the context of that case. *Id.* at *7 (citations omitted).

By contrast here, Plaintiff Heaven does not allege that she entered any "highly personal information and substantive communications that can be linked directly to a website user's identity," like in *Noom*. *Id.* at *1. Rather, she alleged the exact opposite: **she never provided personal information to Prime**.[7] She never entered her email address, date of birth, social security number, bank account numbers, health information, or any other personal information when using the website. She never purchased anything on the website. Plaintiff argues that any information typed into a search constitutes a "communication" under WESCA. But as *Cook* highlighted, searches that merely redirect the user to a different location on the website do not constitute content of communications. *Cook*, 689 F. Supp. 3d at 71-72. Plaintiff's argument that 'any search constitutes a communication' would negate the need for the "case-specific" inquiry that the *Noom* court said is mandatory. *Noom*, 2023 WL 8600576, at *7.

Finally, Plaintiff argues that Prime's reliance on *Cook* and other similar cases is misplaced: "*none of these cases* [cited by Prime] support Defendant's argument because they all analyze the injury in fact standing question, *not* whether the plaintiffs plausibly plead a claim

[7] Complaint at ¶ 8.

under WESCA."[8] Again, Plaintiff's assertion is simply wrong. The *Cook* court expressly conducted a two-part inquiry, first evaluating standing and then evaluating whether Plaintiff had adequately stated a claim under WESCA: "Even if Ms. Cook had standing, she hasn't adequately stated a claim under Pennsylvania's Wiretap Act." *Id.* at 68.

Simply put, arguing that any interaction with a website constitutes a "communication" under WESCA is contrary to the statutory language and case law interpreting the statute.[9]

### B. Plaintiff has not alleged that she sustained an injury under WESCA.

Further, Plaintiff's attempt to skirt the issue of injury in fact under WESCA also falls flat. Plaintiff argues that she can state a claim under WESCA based on a bare statutory violation without even attempting to allege or prove any harm. Plaintiff failed to state a claim under WESCA given that no "contents of communications" were collected. But even if they were, Plaintiff's conclusory allegations of theoretical harm are insufficient to state a claim as well. Under Pennsylvania law, merely alleging a violation of statute does not constitute an "injury in fact." *Open PA Schools v. Department of Education*, 280 A.3d 343 (Pa. Cmwlth. 2022). Rather, "an assertion of abstract or unspecified harm without factual averments connecting the alleged harm to the actions being challenged does not give rise to standing to bring a lawsuit." *Id.* In the context of a statutory breach, every claimant must allege a connection between the statutory breach and an actual injury. *See Gravlin v. Fredavid Builders and Developers*, 677 A.2d 1235, 1238 (Pa. Super. 1996) ("Violation of a statute, although negligence per se, does not constitute a ground for imposing liability unless it can be shown to be a substantial factor in causing the injury."). Plaintiff has not alleged any concrete physical, economic, or other injury resulting

---

[8] Pl's Response at p. 15 (emphasis in original).

[9] Whether Google or Facebook's software has collected "content of communications" on other websites or is capable of collecting such content elsewhere is irrelevant for purposes of Plaintiff's allegations against Prime. *See In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 356 (E.D. Pa. 2023) ("We need to know what session replay code *actually captured, not* what session replay code is *capable of* capturing.") (emphasis added).

from her use of Prime's website. The collection of browsing information does not constitute a cognizable injury, and Plaintiff's WESCA claim fails as a matter of law.

### C. Plaintiff consented to the alleged interception of her search terms.

Plaintiff's arguments concerning consent ignore both the relevant law and the facts of this case. Citing a slew of cases from California and other jurisdictions, Plaintiff complains that she did not *expressly consent* to the collection of data. But express consent is not required under WESCA. And, directly contrary to Plaintiff's arguments, "prior consent" does not require "actual knowledge." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022) ("Though Popa claims she never saw the policy, the Pennsylvania Supreme Court has said that '**prior consent' in § 5704(4) does not require 'actual knowledge.'"**) (emphasis added) (citing *Commonwealth v. Byrd*, 235 A.3d 311, 319 (2020)).

Implied consent is sufficient to defeat a WESCA claim. "Reasonable people understand that what they do on the Internet is not completely private. How could it be?" *Farst,* 700 F. Supp. 3d 222, 230 (citations omitted). Here, "[Plaintiff's] decision to visit [Prime]'s publicly accessible website rather than [a] physical store did not increase [her] expectation of privacy or expose [her] to a concrete harm that otherwise did not exist." *Id*. at 232. By accessing and using Prime's website, Plaintiff impliedly consented to the potential collection of data.

Further, Plaintiff seeks to avoid the fact that she expressly consented to Facebook collecting her every move on the internet for the past decade. Yet she now seeks to blame ***Prime*** for *Facebook's* collection of her data. Such a position is both factually inaccurate and legally untenable. "When individuals sign up for a Facebook account, they agree to Meta's Terms of Service, Data Policy, and Cookies Policy." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 786 (N.D. Cal. 2022). "These policies are contractually binding on both Meta and its users."

*Id*. Plaintiff expressly consent to allowing Facebook to track her activities on the internet, which includes her browsing activities on Prime's website.

Finally, Plaintiff's argues that Prime's checkout page did not adequately advise a user of its privacy policies. But this argument fails on its face because ***Plaintiff never made a purchase on Prime's website***. Plaintiff's contradiction of the allegations in her Complaint must be rejected.

## IV. META AND GOOGLE MUST BE JOINED AS NECESSARY PARTIES

The entire basis of Plaintiff's Complaint is that Facebook and Google technologies tracked her browsing activities on Prime's website.[10] Yet she simultaneously and paradoxically *denies* that Facebook and Google are necessary parties to this case. But Facebook and Google – *not Prime* – are the entities that developed software that allegedly tracked and collected Plaintiff's data. But Plaintiff now argues that Facebook and Google "have nothing to do with" Prime's alleged use of their own technology and, even more incredulous, that "a likely outcome will *not* be that the Meta Pixel and Google Analytics themselves are technologies that uniformly violate WESCA when employed on any website."[11] Nonetheless, she filed a lawsuit *against Prime* based on alleged use of the same technologies that she does not believe "violate WESCA when employed on any website."

The cases cited by Plaintiff are unpersuasive, as the claims in those cases do not center around the activities of the unnamed parties, as they do in this case, where *almost 50 paragraphs* of Plaintiff's Complaint are dedicated to discussing those unnamed parties, and their technology forms the very core of Plaintiff's claims. Plaintiff's Complaint should be dismissed on this basis as well.

## CONCLUSION

For these reasons, Prime respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety.

---

[10] *See e.g.*, Complaint ¶¶ 27 – 73.

[11] Pl's Response at 25 (emphasis in original).

Respectfully submitted,

Dated: October 14, 2024

*/s/ Tara Hopper Rice*

Tara Hopper Rice
ID# 313724

**FROST BROWN TODD LLP**
Union Trust Building
501 Grant Street, Suite 800
Pittsburgh, Pennsylvania 15219
(412) 513-4300 (phone)
(412) 513-4299 (facsimile)
trice@fbtlaw.com

*Attorney for Defendant Prime Hydration LLC*

**CERTIFICATE OF SERVICE**

I, TARA HOPPER RICE, ESQUIRE, certify that on this date, the foregoing Reply in Support of Motion to Dismiss Plaintiff's Complaint has been filed electronically, and is available for viewing and downloading from the ECF System, has been served via the Court's electronic filing service on all counsel of record, and/or was also served via USPS on the following parties who have not consented to electronic service:

Mark C. Atlee, Esquire
ATLEE HALL, LLP
415 North Duke Street
Lancaster, PA 17602
Mcatlee@atleehall.com

Alec M. Lesile
Max S. Roberts
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
aleslie@bursor.com
mroberts@bursor.com

*Counsel for Plaintiff Shantay Heaven and the Proposed Class*

Dated:October 14, 2024

By: */s/ Tara Hopper Rice*
Tara Hopper Rice

0149492.0788171 4886-6514-7884v5
10/14/2024 3:18 pm