IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHANTAY HEAVEN,** individually and on behalf of all others similarly situated *Plaintiff* | : : : : : | **CIVIL ACTION** |
| **v.** | : : : | **NO. 24-4754** |
| **PRIME HYDRATION LLC** *Defendant* | : : : : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                           JANUARY 7, 2025

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Shantay Heaven ("Plaintiff" or "Heaven") commenced this putative class action in the Philadelphia Court of Common Pleas, on behalf of herself and all other individuals, residents of Pennsylvania, who are similarly situated, against Defendant Prime Hydration LLC ("Defendant" or "Prime"), under the Pennsylvania Wiretapping and Electronic Surveillance Control Act, ("WESCA") 18 Pa. C.S.§§ 5701, *et seq.*, asserting that Defendant enabled Meta Platforms, Inc. ("Meta") and Google LLC ("Google") to collect various communications of visitors to Prime's website. Defendant timely removed this matter to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (ECF 1). Thereafter, Defendant filed a motion to dismiss arguing, *inter alia*, that Plaintiff lacks Article III standing. (ECF 5). Plaintiff filed a response in opposition to the motion to dismiss, (ECF 7), and a motion to remand, (ECF 6), therein arguing, *inter alia*, that upon removal, *Defendant* failed to meet its burden to establish subject-matter jurisdiction because Defendant's

own motion to dismiss argues that Plaintiff lacks Article III standing, a component of subject-matter jurisdiction.

For the reasons set forth herein, this Court finds that: (1) Plaintiff's complaint fails to plead facts sufficient to establish Article III standing — consequently, this Court lacks subject-matter jurisdiction over this matter; (2) as such, pursuant to 28 U.S.C. § 1447(c), the appropriate remedy is to remand this matter to the state court from which it was removed; and (3) Plaintiff is not entitled to fees and costs incurred for bringing the motion to remand. Consistent with these findings, Plaintiff's motion to remand is granted, *in part*, and Defendant's motion to dismiss is denied, as moot.

**BACKGROUND**[1]

The facts relevant to the parties' respective motions regarding this Court's jurisdiction are summarized as follows:

> Plaintiff is an individual with a Facebook account. (Compl., ECF 1-1, at ¶ 8). Facebook is owned by Meta. (*Id.* ¶ 26). Defendant is a retailer of sports and energy drinks and maintains a website for the marketing and sale of its drinks. (*Id.* ¶¶ 3, 9). In February of 2024, Plaintiff visited Defendant's website and used the search bar to search for different drink flavors, such as "ice pop," "meta moon," and "blue raspberry." (*Id.* ¶ 8).
>
> Unbeknownst to Plaintiff, Defendant had integrated the Meta Pixel and Google Analytics Pixel into its website. (*Id.* ¶¶ 57, 73). The Meta Pixel is a piece of code that "tracks the people and the type of actions they take" on a website. (*Id.* ¶ 33). For instance, if an individual searches for a particular Prime drink, that

---

[1] This Court accepts as true the allegations in Plaintiff's complaint. *See Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (noting that when considering a motion to remand, a district court must "focus on the plaintiff's complaint at the time the petition for removal was filed" and "assume as true all factual allegations of the complaint"); *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 177 (3d Cir. 2000) (finding that in motions to dismiss challenging subject-matter jurisdiction "[i]f the defendant raises no challenge to the facts alleged in the pleadings, the court may rule on the motion by accepting the allegations as true"); *Katz v. Six Flags Great Adventure, LLC*, 2018 3831337, at *1 n.1 (D.N.J. Aug. 13, 2018) (accepting as true the facts alleged in the complaint and drawing all inferences in Plaintiff's favor when ruling on a motion to remand and a motion to dismiss).

information is transmitted to Meta's servers. (*Id.* ¶ 34). After collecting this information, Meta "processes it, analyzes it, and assimilates it into datasets." (*Id.* ¶ 36). The Meta Pixel also enables Meta to pair a website user's search history with their identity, by connecting the user's search history to their Facebook ID. (*Id.* ¶¶ 63-64). A Facebook ID is a unique number that leads to an individual's Facebook page. (*Id.* ¶ 65). When creating a Facebook account, users must provide their first and last name, along with their birthday and gender. (*Id.* ¶ 25).

Similarly, Google Analytics collects website data through a Google Analytics Pixel, a piece of code installed on a website. (*Id.* ¶ 48). Google receives the electronic communications of website visitors through features like search bars. (*Id.* ¶ 51). Google analyzes this information and provides it to entities like Defendant. (*Id.* ¶ 52). Google can also use the information to, *inter alia*, personalize content and ads on Google and partner sites. (*Id.* ¶ 53). Plaintiff did not consent to her data being intercepted by Meta or Google. (*Id.* ¶ 8).

**DISCUSSION**

Defendant's motion to dismiss and Plaintiff's motion to remand are largely intertwined. Defendant moves to dismiss for, *inter alia*, lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), arguing that Plaintiff lacks an injury in fact sufficient to confer Article III standing. (ECF 5). In response, Plaintiff takes no position on whether this Court has Article III standing. (ECF 7). Instead, in the motion to remand, Plaintiff argues that Defendant has failed to meet its burden to establish that this Court has subject-matter jurisdiction because Defendant argues in its motion to dismiss that Plaintiff lacks Article III standing.[2] (ECF 6). As such, both the motion to dismiss and the motion to remand raise the issue of this Court's jurisdiction over this matter.

---

[2] Plaintiff does not dispute, and this Court similarly finds, that Defendant has met the requirements of CAFA, which, typically, allows the removal of class actions that (a) satisfy minimal diversity requirements; (c) present an amount in controversy exceeding five million dollars in the aggregate, exclusive of interest and costs; and (d) involve a class of at least 100 members. *See* 28 U.S.C. § 1332(d); *Frederico v. Home Depot*, 507 F.3d 188, 195 (3d Cir. 2007); *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 480 (W.D. Pa. 2009).

Generally, a defendant may remove a civil action from state court to federal court "so long as the district court would have had subject-matter jurisdiction had the case been originally filed before it." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014); 28 U.S.C. § 1441(a). Article III standing is a part of subject-matter jurisdiction. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016) ("Absent standing on the part of the named plaintiffs, we must dismiss a putative class action for lack of subject matter jurisdiction."); *Johnson v. Patenaude & Felix. A.P.C.*, 2021 WL 3260064, at *3 (M.D. Pa. July 29, 2021) ("Article III standing is, without question, a component of subject matter jurisdiction."). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico*, 507 F.3d at 193. Additionally, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Plaintiff argues the analysis should end here because Defendant cannot meet its burden to show this case is properly before a federal court while simultaneously arguing that Plaintiff lacks Article III standing. However, as argued by Defendant, federal courts have "an independent obligation to determine if subject-matter jurisdiction exists" and must "exercise the jurisdiction that is conferred upon them by Congress…[with] no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not." *Hartig Drug Co. Inc. v. Senju Pharma. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), and *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

Neither party, nor this Court, has found any precedent of the United States Court of Appeals for the Third Circuit (the "Third Circuit") that addresses this particular issue. (*See* Pl.'s Reply, ECF 15, at p. 3 ("As Defendant admits, the Third Circuit has not ruled on the present issue.")).

However, the Seventh Circuit — while not explicitly saying that an independent analysis of Article III standing is required — concluded that plaintiffs lacked standing in a decision finding remand appropriate when defendant removed the action to federal court, then argued plaintiff lacked standing. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (noting that "it is clear that [plaintiffs'] complaint did not sufficiently allege an actual injury").

In situations where defendants have removed an action to federal court, then contested Article III standing, several courts have concluded that an independent analysis of whether plaintiffs have standing is appropriate. *Katz*, 2018 WL 3831337, at *5 ("As a result of this independent obligation and the inability of parties to waive subject matter jurisdiction, a federal court cannot simply accept a stipulation of the parties regarding subject matter jurisdiction — whether it be that jurisdiction does or does not exist — without rendering an affirmative finding on the issue."); *Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at *8 (S.D.N.Y. June 2, 2020) (concluding it is appropriate to conduct an independent review of subject-matter jurisdiction); *Johnson*, 2021 WL 3260064, at *3 (engaging in an independent analysis to determine if the plaintiff had Article III standing); *Brahamsha v. Supercell OY*, 2017 WL 3037382, at *1, 6 (D.N.J. July 17, 2017) (exercising the court's independent obligation to examine standing).

This Court finds persuasive the line of cases that has proceeded to analyze Article III standing in similar circumstances.[3] Therefore, mindful of a district court's independent obligation

---

[3] This Court recognizes that another line of cases supports Plaintiff's view and finds remand appropriate, without further analysis, under similar circumstances. *See, e.g.*, *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914 (N.D. Ill. 2016) (finding that when a Defendant removed an action to federal court, then moved to dismiss for lack of standing, remand was appropriate "on any analysis" because "no party [was] willing to overcome the presumption against federal jurisdiction"); *Walker v. Kroger Co.*, 2022 WL 20208929, at *2 (N.D. Cal. June 21, 2022) ("By arguing, immediately upon removal…that [Plaintiff] lacks standing, [Defendant] has not met its burden of establishing subject matter jurisdiction."); *Barnes v. ARYZTA,LLC*, 288 F. Supp. 3d 834, 839 (N.D. Ill. 2017) (quoting *Richman Bros. Co. v. Amalgamated Clothing Workers of Am.*, 114 F. Supp. 185, 190 (N.D. Ohio 1953)) (noting, in the context of a CAFA case

5

to examine subject-matter jurisdiction, this Court will determine whether Plaintiff has Article III standing.

### A. *Plaintiff's Article III Standing*

Article III of the Constitution limits federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defens. of Wildlife*, 504 U.S. 555, 560 (1992)).

"A concrete injury must be *de facto*; that is, it must actually exist." *Id.* at 340 (internal quotation marks omitted). The term "concrete" is meant to convey that the injury is "real" and not "abstract." *Id*. A concrete injury includes tangible harms, such as physical and monetary harms, and intangible harms, such as reputational harms, disclosure of private information, and intrusion upon seclusion. *TransUnion*, 594 U.S. at 425. When determining whether an intangible injury is sufficiently concrete to constitute an injury in fact, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 340-41.

---

where the removing party later moved to dismiss based on Article III standing, that "[t]o say that a court is without jurisdiction to decide a case on its merits [yet] has jurisdiction merely to remove the case is to state a contradiction.").

Notably, a statutory violation itself does not confer standing. *See TransUnion*, 594 U.S. at 427 ("[A]n injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."). Moreover, "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6 (quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)) (internal quotation marks omitted).

Here, Plaintiff's alleged injury is an invasion of her privacy. Recently, the Third Circuit addressed how to determine standing when a plaintiff alleged she was injured by an invasion of her privacy. *Barclift v. Keystone Credit Servs.*, 93 F.4th 136, 145 (3d Cir. 2024). First, the Third Circuit looked to the tort that most closely resembled the plaintiff's injury, which it concluded was the public disclosure of private information. *Id.* Then it determined that the type of harm at the root of this tort was the "humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." *Id.* at 145-46 (quoting *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2022)). The Third Circuit found the "harm stems from both the offensive character of the information and its disclosure to the public." *Id.* at 146. Ultimately therein, the Third Circuit determined that the plaintiff lacked standing because her harm was not the kind traditionally associated with public disclosure. *Id.*[4]

---

[4] To collect a debt, the defendant in *Barclift* sent plaintiff's personal information to a mailing vendor, which mailed plaintiff a collection notice. *Id.* at 139. The Third Circuit concluded that transmission of personal information to "a single ministerial intermediary" did not constitute a privacy harm traditionally associated with public disclosure. *Id.* at 146 (quoting *Nabozny*, 84 F.4th at 736). Rather, the harm associated with disclosures that remained "functionally internal are not closely related to those stemming from public ones." *Id.*

Conducting a similar analysis, several district courts in this circuit have held that an invasion of privacy associated with tracking online retail behavior is not sufficient to establish Article III standing. *See, e.g.*, *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58 (W.D. Pa. 2023); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333 (E.D. Pa. 2023); *Hartley v. Urban Outfitters, Inc.*, 2024 WL 3445004 (E.D. Pa. July 17, 2024); *Amelia Ingrao and Elisabeth Pacana, Plaintiffs v. Add Shoppers Inc, Nutrisystem*, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024); *Massie v. General Motors LLC*, 2022 WL 534468 (D. Del. Feb. 17, 2022). In *Cook*, the plaintiff brought claims under the WESCA (the same Pennsylvania statute at issue here) premised on the defendant's alleged tracking of her interactions, such as her mouse movements, clicks, keystrokes, and the URLs of the webpages she visited. 689 F. Supp. 3d at 61. In determining whether the plaintiff had Article III standing, the court looked to "the nature of the information" intercepted, and found it was not the kind of information historically protected by torts such as public disclosure of private information and intrusion upon seclusion. *Id.* at 65.[5] The court reasoned that both torts protect "private" information and concluded that basic online shopping information about a user does not clear this hurdle. *Id.* To underscore this point, the court compared the plaintiff's online searches to shopping at brick-and-mortar stores:

---

[5] At common law, there are typically four privacy torts: intrusion upon seclusion, appropriation of name or likeness, unreasonable publicity given to another's private life (also known as public disclosure of private information), and false light. *Barclift*, 93 F.4th at 145. The two closest to the harm at issue here — intrusion upon seclusion and unreasonable publicity given to private life — both require "private" information that, if publicized or intruded upon, would be "highly offensive to a reasonable person." *Barclift*, 93 F.4th at 145-46; *Cook*, 689 F. Supp. 3d at 65. *See also* Restatement (Second) of Torts § 652D (defining publicity given to private life as "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public"); Restatement (Second) of Torts § 652B (defining intrusion upon seclusion as "[o]ne who intentionally intrudes, physical or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person").

8

> Product preference information is not personal information. This information is no different from what GameStop employees would have been able to observe if [Plaintiff] had gone into a brick-and-mortar store and began browsing the inventory. Her physical movements in the store are like her mouse movements, her pauses to look at inventory are like her mouse pointer hovering over products, and her picking up video games off the shelf are like placing those same titles in her virtual cart. [Plaintiff] certainly doesn't have a reasonable expectation of privacy in this kind of public shopping behavior in the physical world, and she doesn't have it in the digital world, either.

*Id.* at 66.

Guided by *Cook*, in *In re BPS Direct*, the court similarly found that website users who "did not disclose highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards cannot establish concrete harm." 705 F. Supp. 3d at 355. Notably, in allegations that mirror the present case, one of the plaintiffs in *In re BPS Direct* was a Facebook user who alleged defendants assisted Facebook in intercepting communications that included his name, Facebook ID, and the gun he purchased. *Id.* at 358-59. Despite encompassing some personal information, the court held that the plaintiff's allegations fell short because it was "not persuaded concrete injury exists merely because [defendants] disclosed Website Users' names and addresses." *Id.* at 359. Likewise, other courts have found that the collection of some basic personal information does not create an injury in fact. *Hartley v. Urban Outfitters, Inc.*, 2024 WL 3445004, at *1 (E.D. Pa. July 17, 2024) (finding no injury in fact when Plaintiff alleged Defendant used "spy pixels" to record information about consumers opening promotional emails, which included their email addresses); *Amelia Ingrado and Elisabeth Pacana, Plaintiffs, v. AddShoppers, Inc., Nutrisystem Inc.*, 2024 WL 4892514, *2 (E.D. Pa. Nov. 25, 2024) (finding "a person's internet browsing activity and email address is not sufficiently sensitive information to support the concrete injury requirement for Article III standing").

Here, the factual allegations in the complaint are in line with the aforementioned cases. Plaintiff alleges that Defendant captured her searches for drink flavors, such as "ice pop," "meta moon," and "blue raspberry," and that this information was transmitted to Meta's servers and paired with Plaintiff's Facebook ID. (Compl., ECF 1-1, at ¶¶ 8, 34, 63-64). Searches for drink products are not the kind of "highly sensitive personal information" that have historically provided a basis for privacy claims. *See In re BPS Direct*, 705 F. Supp. 3d at 355. Rather, like in *Cook*, this Court finds that Plaintiff's drink flavor searches more closely resemble a shopper entering a brick-and-mortar store and walking through the drink aisle — information that would not create a harm if disclosed. Additionally, that Plaintiff's search information is tied to her Facebook ID does not alter this Court's conclusion. A Facebook ID, like other basic personal information, does not necessarily result in an injury in fact if collected or disclosed. *See In re BPS Direct*, 705 F. Supp. 3d at 359; *Hartley*, 2024 WL 3445004, at *1; *Amelia Ingrado*, 2024 WL 4892514, at *2.[6]

This Court is aware that the Third Circuit has previously found injury sufficient to confer standing in different internet privacy cases. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 272-74 (3d Cir. 2016); *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 324-25 (3d Cir. 2019). However, this Court joins others in finding *Nickelodeon* and *Google* distinguishable based on the nature of the information at issue. *Cook*, 689 F. Supp. 3d at 67; *In re BPS Direct*, 705 F. Supp. 3d at 361. In *Google*, the plaintiffs alleged that Google created a web browser "cookie" that tracked an internet user's data — including, recording "every

---

[6] This Court is also aware that some decisions determining plaintiffs lacked standing have relied, at least in part, on the fact that website operators collected only anonymous information. *See Massie*, 2022 WL 534468, at *5 ("Plaintiffs do not have a reasonable expectation of privacy over the anonymized . . ."); *In re BPS Direct*, 705 F. Supp. 3d at 359 (ultimately concluding that the court was not persuaded an injury in fact existed but acknowledging that caselaw is "unclear" about whether disclosing information such as names and addresses confers standing). However, this Court is persuaded that internet searches, combined with a person's Facebook ID, which simply leads to an individual's Facebook page, (ECF 1-1 ¶ 65), are not the kind of sensitive, private information that has been historically protected by courts.

communication request by that browser to sites participating in the ad network, including all search terms the user has entered" — and did so in contravention of their browser's cookie blockers. 934 F.3d at 320-21; *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 131 (3d Cir. 2015).  In *Nickelodeon*, the defendant collected children's personal information, including the webpages they visited and what videos they watched on the websites, despite promising not to collect any of the children's personal information.  827 F.3d at 267.  As such, in *Google* and *Nickelodeon*, the defendants allegedly collected more sensitive and private information than that at issue in the present action.  Further, unlike in the present action,[7] the defendants collected this information after promising they would not.  *See Faust v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 230-31 (M.D. Pa. Nov. 1, 2023) (distinguishing *Nickelodeon* and *Google* by noting Defendants in those actions "deceived plaintiffs by secretly collecting their private data *after* promising they would not" and because the "type of data collected" was distinguishable from data revealing shopping preferences).[8]

Accordingly, this Court finds that the information allegedly collected by the Defendant — which includes sports and energy drink flavor searches combined with a Facebook ID — is not the type of private information that, when disclosed, creates a harm sufficient to establish standing. *See Barclift*, 93 F.4th at 145 (noting that the harm in privacy torts stems, in part, from the "offensive character of the information").  Notably, Plaintiff did not suggest any information was collected beyond drink searches connected to her Facebook ID, nor did she describe any harm

---

[7] Here, Plaintiff alleges that she did not consent to the collection of her private data, but she does not allege that Defendant promised not to collect or disclose her data.  (ECF 1-1).

[8] In *Nickelodeon*, the Third Circuit held that Defendant Viacom's message to parents about not collecting children's personal information "may have created an expectation of privacy," such that Plaintiffs' intrusion upon seclusion claim should not be dismissed.  827 F.3d at 293-95.

11

suffered other than an "invasion of [her] privacy." (ECF 1-1 ¶ 14). We therefore find that, on the facts as alleged in this complaint, Plaintiff lacks Article III standing.

Because this Court lacks subject-matter jurisdiction on account of Plaintiff's lack of Article III standing, this matter must be remanded to the Philadelphia Court of Common Pleas, the court from which it came. *See* 28 U.S.C. § 1447(c) (requiring remand if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction"); *Collier*, 889 F.3d at 897 (finding remand, rather than dismissal, the appropriate remedy when a Defendant removes an action to federal court, then moves to dismiss based on a lack of standing); *Katz*, 2018 WL 3831337, at *9 (same). Additionally, because this Court finds that this case should be remanded, Defendant's motion to dismiss is denied, as moot. As such, the Court needs not address the other arguments raised in Defendant's motion to dismiss. *See Katz*, 2018 WL 3831337, at *1 (denying motion to dismiss as moot once the court determined the case should be remanded); *Brahamsha*, 2017 WL 3037382, at *7 (noting that the court need not reach the other issues raised in defendant's motion to dismiss once the court determined the case should be remanded, and that Defendant's motion to dismiss should be denied as moot).

### B. *Plaintiff's request for fees and costs*

Plaintiff argues that she is entitled to reasonable fees and costs incurred in bringing her motion to remand. Pursuant to 28 U.S.C. § 1447(c), an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." A district court "has broad discretion and may be flexible" in determining whether awarding fees is appropriate under § 1447(c). *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996). However, "[a]bsent unusual circumstances, courts may award attorney's fees under

§ 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

Although this Court ultimately finds that remand is appropriate, resolving the parties' motions involved an analysis of multiple unsettled areas of law. Therefore, we cannot conclude that Defendant lacked an "objectively reasonable basis for seeking removal." *See also Brahamsha*, 2017 WL 3037382, at *6 (denying attorney's fees and costs, in part, because the Third Circuit has not yet crafted "any controlling precedent" on the issue). Accordingly, Plaintiff's motion, insofar as it seeks fees and costs, is denied.

**CONCLUSION**

For the reasons set forth, Plaintiff's motion to remand and for fees and costs is granted, *in part*. Plaintiff's motion is granted insofar as it seeks to remand this action to the Philadelphia Court of Common Pleas. Plaintiff's motion is denied insofar as it seeks fees and costs. Additionally, Defendant's motion to dismiss is denied as moot. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.